## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

John Suman,

    **Plaintiff,**

v.                                                              Case No. 08-2585-JWL

**Geneva Roth Ventures, Inc. and**
**Rancher's Gourmet, Inc.,**

    **Defendants.**

## **MEMORANDUM AND ORDER**

Plaintiff John Suman filed suit against defendants alleging that defendants terminated his employment in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. Defendants move for summary judgment on the grounds that plaintiff was employed solely by defendant Rancher's Gourmet, Inc., an employer with less than 50 employees such that it is excluded from the FMLA's coverage. As will be explained, the court concludes that defendants constitute a single employer for purposes of the FMLA and, consequently, have the requisite number of employees for FMLA coverage. Defendants' motion, then, is denied.

## **I.     Facts**

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Defendant Geneva Roth Ventures, Inc. (hereinafter "Geneva Roth") is owned by Mark Curry and is the corporate parent of various subsidiaries, including defendant Rancher's Gourmet, Inc. Rancher's Gourmet, located in Overland Park, Kansas, is

an upscale retailer of meat and related food products. In September 2007, plaintiff John Suman received a written offer of employment from Phil Duran, the Vice President of Services Businesses for Geneva Roth, proposing employment as the business manager of Rancher's Gourmet. The offer was made "on behalf of Geneva Roth . . . and Rancher's Gourmet." Mr. Suman accepted the offer and, in doing so, signed an "Employee Acknowledgment Form" concerning his "employment relationship with Geneva-Roth Ventures, Inc." The form was also signed by Stephanie Richardson, an employee of Geneva Roth.

Geneva Roth handles all human resources functions for Rancher's Gourmet, including payroll and benefits administration and services. It is undisputed that Mr. Suman's medical and dental benefits were provided through Geneva Roth and that his 401(k) plan was provided through Geneva Roth. Any FMLA requests made by Rancher's Gourmet employees are handled by Janet Kneib, Geneva Roth's human resources director. Moreover, any vacation requests made by Rancher's Gourmet employees are handled by a Geneva Roth employee. Finally, Geneva Roth's human resources department maintained custody and possession of Mr. Suman's personnel file both during and after his employment.

As the business manager for Rancher's Gourmet, Mr. Suman initially reported to Mr. Duran. After Mr. Duran left his employment with Geneva Roth, Mr. Suman reported to Bob Healy, an independent contractor paid by Geneva Roth to perform consulting services for its corporate subsidiaries. Mr. Duran and, later, Mr. Healy dictated the hours and days that Mr. Suman would open and close Rancher's Gourmet for business. Mr. Suman's work schedule had to be approved by Mr. Duran and, later, Mr. Healy. Both Mr. Duran and Mr. Healy frequently

2

exercised their authority to make scheduling changes concerning Mr. Suman and other Rancher's Gourmet employees. Moreover, Mr. Duran and, later, Mr. Healy dictated all hiring decisions, pay decisions and termination decisions for all Rancher's Gourmet employees. By way of example, Mr. Healy directed Mr. Suman to impose disciplinary action on a particular Rancher's Gourmet employee and subsequently directed Mr. Suman to fire that employee. Mr. Suman's work performance was evaluated and reviewed by Mr. Duran and, later, Mr. Healy and performance plans and reviews were maintained in Mr. Suman's personnel file in Geneva Roth's human resources department.

Geneva Roth also controlled all purchasing and inventory decisions concerning Rancher's Gourmet. Mr. Suman did not have the authority to purchase equipment for Rancher's Gourmet without the consent of either Mr. Duran or Mr. Healy and Geneva Roth's accounting department. After Mr. Duran left his employment with Geneva Roth, Mr. Healy required Mr. Suman to have all purchases approved by Geneva Roth's accounting department. Although Mr. Suman was permitted to create a list of products available for sale at Rancher's Gourmet, the list was subject to approval by either Mr. Healy or Geneva Roth's marketing department and Mr. Suman was limited to purchasing inventory on the approved list. In addition, all advertising decisions concerning Rancher's Gourmet were made by Mr. Duran or Mr. Healy.

It is undisputed that Geneva Roth terminated Mr. Suman's employment in September 2008. Specifically, the decision to terminate Mr. Suman's employment was made by Mark Curry, Ms. Kneib, Mr. Healy and Geneva Roth's corporate counsel. Ms. Kneib and Geneva Roth's corporate counsel notified Mr. Suman of his termination.

3

Additional facts will be related, as necessary, in connection with the court's analysis of defendant's motion.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those

4

dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.  Discussion

The FMLA was enacted, in part, "to balance the demands of the workplace with the needs of families . . . [and] to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers." *Harbert v. Healthcare Servs. Group, Inc.*, 391 F.3d 1140, 1147 (10th Cir. 2004) (quoting 29 U.S.C. § 2601(b)). The Act entitles eligible employees of covered employers to take up to 12 weeks of unpaid, job-protected leave each year because of, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id*. (quoting 29 U.S.C. § 2612(a)(1)(D)). "As part of the balance that was struck between the interests of employers and the interests of employees, Congress included a small employer exception that excludes from the Act's coverage employers with fewer than 50 employees." *Id.* at 1147-48 (citing 29 U.S.C. § 2611(4)(A)(i)).

5

It is undisputed by the parties that defendant Rancher's Gourmet, Inc. does not have the requisite number of employees to be considered an "employer" for purposes of FMLA liability such that if plaintiff is deemed to have been employed solely by Rancher's Gourmet (as urged by defendants in their motion for summary judgment), then summary judgment is appropriate in favor of defendants on plaintiff's claim. It is also undisputed by the parties, however, that defendants Rancher's Gourmet and Geneva Roth, when considered together, have the requisite number of employees to be considered an "employer" for purposes of FMLA liability such that if plaintiff is able to demonstrate that Rancher's Gourmet and Geneva Roth constitute a single employer for purposes of the FMLA (as urged by plaintiff in response to defendants' motion), then summary judgment must be denied.[1]

The relevant Department of Labor regulations implementing the FMLA provide that the legal entity which employs the employee is "normally" the employer for purposes of the FMLA. 29 C.F.R. § 825.104(c). Moreover, "where one corporation has an ownership interest in another corporation, it is a separate employer unless it meets the 'joint employment' test discussed in § 825.106, or the 'integrated employer' test contained in paragraph (c)(2) of this section." 29 C.F.R. § 825.104(c)(1). Paragraph (c)(2), in turn, describes the "integrated employer" test as follows:

---

[1]In response to defendants' motion, plaintiff also argues in the alternative that defendants are joint employers. Because the single-employer test best applies to the facts of this case–and, indeed, because the court concludes that the two entities constitute a single employer under that test–the court declines to address plaintiff's contention that the two entities are joint employers.

> Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the "integrated employer" test. Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility. A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities are an integrated employer include:
>
> > (i) Common Management;
> > (ii) Interrelation between operations;
> > (iii) Centralized control of labor relations; and
> > (iv) Degree of common ownership/financial control.

29 C.F.R. § 825.104(c)(2). With respect to joint employment, the implementing regulations explain that two businesses may be joint employers under the FMLA where both employers exercise some control over the work or working conditions of the employee, such as where "there is an arrangement between employers to share an employee's services or to interchange employees." 29 C.F.R. § 825.106(a). Unlike integrated employers, which are treated as a single legal entity, joint employers "may be separate and distinct entities with separate owners, managers, and facilities." *Id.* As explained by the Tenth Circuit, the single-employer test "looks at the overall relationships of the two entities, [while] joint-employer status is determined by focusing on the entities' relationships to a given employee or class of employees." *Sandoval v. City of Boulder, Colorado*, 388 F.3d 1312, 1324 (10th Cir. 2004).

The four factors pertinent to the single-employer test in the DOL's implementing regulations are the same factors that the Tenth Circuit has considered significant in considering whether two nominally separate entities constitute an integrated enterprise or single employer. *Id.* at 1322. While the Circuit has stated that it considers the third factor to be the most

7

important, *see id.*, it has also stated that the "heart of the inquiry" concerning single-employer status "is whether there is an absence of an arm's length relationship among the companies." *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir.1999).

The court begins its analysis, then, with the "highly determinative" factor of whether there exists "centralized control of labor relations" between Rancher's Gourmet and Geneva Roth. *See Bristol v. Board of County Comm'rs*, 312 F.3d 1213, 1220 (10th Cir. 2002). With respect to this factor, the Tenth Circuit has further explained that the "critical question is 'what entity made the final decisions regarding employment matters relating to the person claiming discrimination?'" *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993). It is undisputed that Geneva Roth made the decision to hire and fire Mr. Suman. This fact weighs strongly in favor of single-employer status. *See Sandoval*, 388 F.3d at 1323 ("the right to terminate employment" is the kind of control over employment decisions that justifies treating two entities as a single employer). Moreover, it is undisputed that Rancher's Gourmet relied on Geneva Roth for all issues relating to labor relations and human resources, including Geneva Roth's human resources staff and the provision of benefits, the handling of vacation and leave requests, and the administration of payroll. Geneva Roth had control over scheduling, work, and discipline issues concerning Rancher's Gourmet. The significant extent to which Geneva Roth controlled the operations of Rancher's Gourmet heavily supports single-employer status. *See Bristol*, 312 F.3d at 1220; *Frank*, 3 F.3d at 1363 ("To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary.").

An analysis of the remaining factors does not counterbalance Geneva Roth's virtually

8

complete control over the labor relations of Rancher's Gourmet. Common management clearly exists between the two entities. Mark Curry has an ownership interest in both entities and Ms. Kneib, Mr. Healy and Mr. Duran are all Geneva Roth managers or consultants who perform management functions for both entities. In addition, the two entities share one Chief Financial Officer. Geneva Roth also exerts nearly complete financial control over Rancher's Gourmet, dictating purchasing and inventory decisions as well as salary decisions for Rancher's Gourmet employees. Finally, there exists a significant interrelation of operations in that Rancher's Gourmet relies on Geneva Roth for virtually all services, including accounting, payroll, benefits and the management of day-to-day operations. *See id.* at 1362-63 (listing common indications of interrelated operations).

In support of its motion for summary judgment, defendants contend that Mr. Suman was employed solely by Rancher's Gourmet as evidenced by the fact that Mr. Suman's paychecks bore the Rancher's Gourmet name. But even defendants concede that this fact does not preclude Mr. Suman from proving that Rancher's Gourmet and Geneva Roth constitute a single employer for purposes of the FMLA. And, indeed, in light of the overwhelming evidence concerning the high degree of control exercised by Geneva Roth over Rancher's Gourmet's operations–including complete control over employment decisions concerning Rancher's Gourmet–the mere fact that Rancher's Gourmet appeared on Mr. Suman's paychecks is simply not sufficient to overcome a finding of single-employer status.

The primary argument rendered by defendants in support of their motion is that single-employer status cannot be found in the absence of a "functional" interrelationship such that the

9

two entities can share employees. According to defendants, the entities here are not functionally interrelated because Geneva Roth is "primarily a call center for a loan company" and Rancher's Gourmet sells meat and related food products. Defendants contend that because the entities cannot share employees by virtue of the distinct services offered by the entities, the single-employer status cannot apply. The court disagrees. While the sharing of employees is one of many indicators of interrelated operations, *see Frank*, 3 F.3d at 1262-63, the Tenth Circuit has never suggested that the sharing of employees is critical to a finding of single-employer status.

Even cases cited by defendants support the idea that the sharing of employees is simply "one factor" tending to show interrelatedness. *See Schubert v. Bethesda Health Group, Inc.*, 319 F. Supp. 2d 963, 967 (E.D. Mo. 2004). While defendants certainly direct the court to cases in which courts have declined to find single-employer status in part because the entities lacked a functional relationship, those cases, unlike here, emphasized either that the parent company had no participation in the pertinent employment decision or that the entities had virtually no interrelationship whatsoever, including the sharing of employees. *See Engelhardt v. S.P. Richards Co.*, 472 F.3d 1, 6-7 (1st Cir. 2006) (no interrelation of operations where all facets of subsidiary's operations were entirely dictated by subsidiary employees and, among other things, subsidiary made independent decisions with respect to labor relations and had separate HR department, separate records and distinct nature of business); *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 443-44 (4th Cir. 1999) (not interrelated in light of overwhelming evidence that "each company operates separately and distinctly" and no evidence that any entity other than subsidiary made final employment decision regarding plaintiff); *Papa v. Katy Indus., Inc.* 166

F.3d 937, 942 (7th Cir. 1999) ("There is no suggestion that the parent . . . or the enterprise as a whole formulated or administered the specific personnel policies, or directed, commanded, or undertook the specific personnel actions, of which the plaintiffs are complaining."); *Cruz-Lovo v. Ryder Sys., Inc.*, 298 F. Supp. 2d 1248, 1254 (S.D. Fla. 2003) (no interrelation of operations in part because distinct nature of businesses; in addition, subsidiary retained sole authority to hire, fire and supervise its employees). Those cases, then, are not persuasive to the court on the undisputed facts shown here.

In sum, defendants have not shown that the undisputed facts establish that Mr. Suman was employed solely by Rancher's Gourmet. The evidence demonstrates an absence of an arm's length relationship between Rancher's Gourmet and Geneva Roth in all facets of Rancher's Gourmet's operations such that single-employer status is established.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc.48) is denied.

**IT IS SO ORDERED.**

Dated this 11th day of December, 2009, at Kansas City, Kansas.

                                                <u>s/ John W. Lungstrum       </u>
                                                John W. Lungstrum
                                                United States District Judge